Good morning, Members of the Court. Judge Hawkins, Judge Solomon, Judge Murphy. My name is Mike Welch. I'm here on behalf of the plaintiff in the lower court and the appellant in this court, Julia Smith. She can introduce herself when she gets up. All right. Members of the Court, our arguments were pretty cut and dried on this, and they really come down to just basic what we construe as legal errors. With respect to the discrimination, disability discrimination claim, simply put, the lower court applied the incorrect standard for what constitutes a limitation on a major life activity, and that life activity in this case was the plaintiff's job, Ms. Smith's job. The court explicitly said that yes. The question is, is it enough to simply say it's affecting my job? I think what Judge Alsup was asking for was a little clearer articulation of the basis for causation, the linkage between the medical diagnosis and the inability to do the work. And he gave you the opportunity or gave the client the opportunity to amend the complaint, and he didn't get much in return. So I guess the question is, how much more are you prepared to offer? Your Honor, actually, the first rendition of the complaint, which was filed by the prior counsel, was strictly bare bones, and the court definitely had every reason and did, in fact, state two things. He said, I want to see a complaint that shows what her actual disabilities are because none of them were stated in the original complaint. And second, you need to say what the major life activities are that are affected. Right. I came on board at that point, drafted up an entire one-page paragraph that spelled out five or six diagnosed medical conditions that responded to the first deficiency, and then I further laid out four or five life or, excuse me, major life activities most significantly work. My sense is that your complaint, even as amended, did not tie the two together, however. In other words, the judge expected and did not get any allegation of how the plaintiff's disability affected the major life activity, and so without that found that there was an implausible claim and dismissed it. Well, Your Honor, this gets back also, though, to the basis for the court's order. After that first amended complaint was submitted, it was not at all contested based on these Twombly claims, the plausibility factor that Judge Murphy just referred to. In fact, the defendant submitted to the motion to amend the complaint without argument. They accepted it. And then when they did apply a subsequent or file a subsequent motion to dismiss, it had nothing to do with the sufficiency of the pleadings under Twombly. It was based on a completely different argument, which was that there was a letter attached to the original complaint constituting the reasons for the dismissal, and because it was attached, it should be construed as an admission that the statement's reasons given for the dismissal or for termination, rather, were true. Counsel, I guess it appeared to me that what concerned Judge Alsup was the employer did make accommodations by allowing your client to work from home and only work, you know, so many hours or portions of the work week. And what I don't see in the complaint is any explanation of why the medical diagnosis prevented her from even working at home. There's nothing that says I can't sit at my computer console for more than 15 minutes without having to take a break, the kind of thing that we typically see in Social Security cases when we're trying to determine disabilities. And there's nothing there. She actually stated that she could work from home, but that she was denied that accommodation later. So the problem wasn't that she was denied that accommodation. The problem was after the doctor issued a note that said you're cleared to return to work. Isn't that right? I don't know if that was alleged in the complaint, Your Honor, that her doctor This is just on the pleadings, correct? It's solely on the pleadings. And it's your contention that the major life activity that Judge Alsup was looking for is embraced in the complaint in what? Correct, Your Honors. Fill in the blank. Yeah, it was the major life activity we're talking about. We're talking about primarily her ability to work. The stenosis, I have trouble pronouncing some of these medical terms I'll be remembering offhand, but the stenosis, the growths and masses on her neck, the radiculopathy that affected her neurological system and so on. One of the limitations was that she couldn't move her head or her neck. And, in fact, Judge Alsup acknowledged that when he said, okay, I get it. She's got pain and she can't move her neck and she can't move her head, but that just makes it more difficult to do her job. It doesn't show that she is unable to do her job or prevented from doing her job. And difficulty is exactly the standard that applies here. And that's what the Court concluded was the essential element that was missing. But how much — how hard is it to simply say that as a result of, you know, this pain, I can't sit, I can't concentrate, I can't type on a keyboard? There's nothing like that. It's not difficult, Your Honor, at all. And, again, if the arguments against the complaint had addressed that rather than addressed any aspect of the pleading, because, again, we satisfied what was specifically asked for in the first dismissal. Well, I'm not sure the Court thought that. As I read the Court's opinion, he said, I asked you to particularize this and you didn't. He asked to particularize what the conditions were. Right. Which we did. We spelled them out. We listed five or six of them and asked to particularize the major life activities that were affected. And, again, those weren't — I'm looking at ER 5 and ER 6, which is the District Court's order in which he recites the fact that her medical symptoms caused her pain or related chronic pain. But then he says, in mere conclusory fashion, Smith alleges her disability limited her major life activities, including working, walking, head and neck mobility, and physical exercise. Smith is obliged to allege facts explaining how her pain prevented her from performing her employment duties to establish she has a prima facie disability. And just saying that I have pain and limited mobility are not enough to make a plausible inference that she's unable to do her job and has a qualified disability, which is an essential element to all of her claims. So where did the District Court go awry? Well, we missed — I missed — we had different interpretations of what the Court said in ER 5, because I focused and apparently he focused on what he construed as a requirement that the pain and the limited head and neck mobility had to have prevented her from doing her job and had to have made her unable to do her job. So I see this order as being focused — But is that what you were — is that what she was trying to allege? I mean, was she basically saying, look, as a result of all this, I just can't do the work in any way, shape or form? No. She was just alleging what the law and what the cause of action required, that it made it more difficult. It limited her ability to do it. Judge Alsup was saying that's not enough. You need to show that it prevented her from doing her job, and she was unable to do her job. And the Artiega case that Judge Alsup cited said quite the opposite. It said you don't need to show inability. And they cited a Ninth Circuit — Artiega cited a Ninth Circuit case for that proposition. Inability is not the standard. And this isn't the ADA where even substantial limitation is a standard. This is FEHA where making it difficult is enough. Making it difficult is synonymous with a limitation. That is exactly what the statute says. That's not my interpretation of it. Is it your position that if an employer accommodates an injured employee by permitting them to do light duty or to work from home, that that is nonetheless a complete disability for which the employer is liable for damages under FEHA? No, Your Honor, but that wasn't, again, a pleading issue that was before the court. I'm just trying to take your argument to its logical extreme and see how far you're going to run with it. Okay. No. No. Accommodation is a separate issue. She could have, and she alleged that she could have worked with accommodations that allowed her to work from home, but she wasn't permitted to work from home when she came back. It was for some period of time. For some period of time. When she came back and she said, I want to continue to be able to work from home, she contends her employer said, no, we can't allow you to do that. Your absence has been — in fact, that's a basis for firing you because excessive absenteeism.  I don't know if the Court wants to hear on the second. You've run out of time here. Okay. So I'll give you a minute or two on rebuttal, but let's hear from the employer. Thank you. May it please the Court, Marjorie Fauchman on behalf of Defendant Constellation Brands. Your Honor, in her first complaint, the plaintiff alleged merely that she had a disability. Judge Alsup dismissed that complaint and he admonished her to plead her best case. The first element of a claim for disability discrimination is that the individual has a disability, and the definition of that is that the individual has a medical condition that affects the bodily system that limits a major life activity. So the plaintiff — Is it your client's position that the amended complaint says nothing about an MLA, major life activity? No, Your Honor. The amended complaint did allege that she had medical conditions. What it did not allege with any factual basis is that she was limited in a major life activity. That's the key here. The complaint mentions walking, doesn't it? It does. Isn't that a major life activity? That is a major life activity. But she didn't connect how she was limited by these medical conditions in that major life activity. Is your opponent correct when he says that your motion to dismiss did not address the pleading issue but simply went to the merits? That's not true. Okay. Tell us. In the beginning of the motion, we did talk about the fact that the plaintiff had not adequately pled this cause of action. This — when the judge — the judge looked at the term limited, referred to the Artiega case, which says that it's not enough to plead that you have a medical condition. It's not enough that you plead that you have pain, which the plaintiff has alleged. She alleged she has pain, but that's a subjective term, and it's quite variable. She didn't allege any facts to support how that pain limited her in those major life activities that she listed, including working. Well, I'm not sure you got to Judge Hawkins' question, and you should, but your opponent just said that — all right. Judge Elsa cited Artiega for the proposition that for pain to rise to the level of disability, there must be some, quote, corresponding limitation on activity. And you, in your briefing and here today, are using that to argue that there has to be a connection between the pain and the major life activity, and your opponent says that's not true at all. He seems to indicate that the case, Artiega as well as Leatherberry, doesn't impose such a pleading requirement in terms of a connection. Well, Your Honor, neither of those cases were pleading cases. But I think it's clear under Iqbal that a plaintiff has to plead specific facts to support an allegation. All right. So in this case, she pled an element. She pled that she was limited. That's an element of the claim. Artiega provides the law, and Iqbal Twombly provides the pleading standard. Correct. All right. What's the nature of your client's business? They are an alcoholic beverage supplier, Your Honor. So it requires lots of loading of heavy stuff. Is that right? The plaintiff's position was as a senior financial accountant in San Francisco. Could she have performed this from home? I don't believe so, Your Honor. I believe some of the systems – Could she perhaps have performed it sitting at the office? Correct. She did request an accommodation, didn't she? She did, Your Honor. What was the accommodation? She requested a leave of absence beginning in December of 2014. She began her job in October 2014. She requested a leave of absence in December, which was granted. That's the only accommodation she sought? No. And that leave was extended multiple times until March, when her doctor released her to return to work on a part-time basis. And did she request a job accommodation at that point? That was the accommodation, was to work on a part-time basis, and that request was granted. She appeared one day and did not return to work. Okay. The company waited 10 days or two weeks and then terminated her employment. Moving on to the wrongful discharge claim. So plaintiff has pled a claim for wrongful discharge in violation of public policy. Some of that is based on her disability discrimination claim, which will rise or fall with her disability discrimination statutory claim. The other portion of it is based on California Labor Code Section 232.5, which states that an employer may not discharge an employee who discloses information about the employer's working conditions. Plaintiff alleges that she had several conversations during her short employment with employees about financial operations, about working conditions, about the fact that she believed that the job was not what was represented to her when she was hired. And Judge Alsup ruled that those conversations were mere grousing in the workplace, that they didn't rise to the level of a disclosure. This sounds like the kind of exchange we would have if you had prevailed on a motion for summary judgment. What does this have to do with the pleading inadequacy? So the judge determined that the pleading, the allegations alleged, didn't rise to the level of a violation of the Labor Code. He's either right or wrong about that, and that's the end of the story. The other stuff might be appropriate for summary judgment. It's not appropriate for determination on the pleadings, correct? Well, I think if the allegations don't support a claim, then it is right for the pleadings. I would also contend that the allegations, to the extent that these were coworkers discussing workplace issues. Not to belabor the point, but when you talk about her analysis of the complaints she made about what she heard in the workplace, that has to do with the quantum of proof, not whether there's sufficient notice in the pleadings for your client to be able to defend. Well, let me approach it a different way, Your Honor. That claim is also preempted under Section 7 of the National Labor Relations Act. Did Judge Alsup reach that issue? He did not. And we don't need to hear about it here, do we? Well, this review is de novo. Okay. So these are statements that are arguably concerted activity and covered by the National Labor Relations Act. And there is a California case that addressed this issue straight on, which is Luke v. Colotype Labels, where a plaintiff brought a Labor Code Section 232.5 claim, and the Court found that it was preempted under Section 7. Finally, Your Honor, we do not believe that it was an abuse of discretion for Judge Alsup to deny a plaintiff another opportunity to amend the complaint. A judge has particularly broad discretion to dismiss without leave to amend when a plaintiff has been given leave to amend once and still fails to plead the claim with the requisite particularity. And in this case, Judge Alsup admonished plaintiff to plead her best case. Okay. Thank you, Your Honor. Any other questions? Thank you very much. Counsel, I'll give you two minutes on rebuttal. Just briefly to revisit the actual motion to dismiss on which the order was issued, counsel said that they did address the pleading issue. And that's technically correct, but not on a Twombly basis. They actually argued that we alleged too much. And when we alleged it affected a major life activity and that her conditions were disabling, we also added the statutory language that they were also potentially disabling. And there were also potential major life activities affected in addition to the disabling. But isn't the problem that the district court had here, and I think I'm sympathetic to it, the Supreme Court has told us in Iqbal Twombly and follow-on cases that it's not enough to simply track the language of the statute or the elements of the cause of action and then conclude the defendant is liable. You've got to flesh it out with something more than simply a bare recitation of the legal requirement. No question, Your Honor. And that's what our amended paragraph 8 did, 7 or 8, I'm not sure which one it was now. But, again, we added almost a page of allegations with specificity of the conditions themselves, none of which existed before, and the major life activities affected, none of which existed before. When the motion was made, the argument was made, well, they also added, in addition to major life activities, potentially, the language potentially. And potentially is in the statute. So they weren't contesting what was actually alleged. They were contesting that it potentially isn't enough when, in fact, the statute says it is. So they're alleging, or they're arguing the alleged too much there. But it wasn't a Twombly argument. It wasn't an argument that we don't know what the pleading is about, we can't formulate a response to it. I guess I'm still puzzled by her inability, and I don't think it would have taken much, but her inability to explain the correlation between the disability and her inability to work as a senior financial analyst, which sounds to me like a pretty sedentary job. Yeah. Well, Your Honor, then let me just get to the last point, which is the amendment issue. Because, again, as counsel, new counsel coming in, I have to go with the motion I dealt with. And, again, that motion did not argue Twombly arguments. It did the first time. They were satisfied. The motion to amend was made, not contested at all. Okay? That was their opportunity to say, hey, these amendments don't, they don't work. They're not sufficient. This amendment doesn't cure the problem. Instead, they submitted on it. And then they made a completely different argument about extrinsic evidence, something attached to the document. That's what we responded to. Now, obviously, Judge Ossoff can base his decision whatever he thinks is appropriate. But from our standpoint, we didn't have the opportunity to address his concerns on that point because that wasn't what the motion was. Well, it is a 12b-6 motion, is it not? Yes. So for failure to state a claim. Right. So given that the Court says, okay, you'll let me ---- Which is an Iqbal Twombly subject, is it not? It's a Twombly subject. Yeah. But we were led to believe that Twombly, there was no longer a Twombly issue because it wasn't raised by the defendants. They accepted that. I think we understand your position. I'd let you run over a little. Okay. Can I ask you just one question? Yes, of course. If you can answer it with a yes or no, please tell me. Once Judge Ossoff issued his opinion, did you move for reconsideration? I did not move for reconsideration. The answer is no. No. Correct. Thank you. I have no new facts or law. Thank you. Thank you very much. The case just argued is submitted.
judges: Hawkins, Tallman, Murphy